# In the United States Court of Federal Claims

Nos. 14-304 L and 14-1120 L
(Filed: February 8, 2016)

| | | |
|---|---|---|
| TROY ALFORD ET AL., and JAMES M. CHANEY, JR | ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | |
| | ) | Subject Matter Jurisdiction, State law |
| v. | ) | claims |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

*B. Blake Teller*, Teller, Hassell & Hopson, LLP, Vicksburg, Mississippi, attorney for plaintiffs.

*William J. Shapiro* and *Carter F. Thurman*, United States Department of Justice, Environmental & Natural Resources Division, Natural Resources Section, Washington, DC, for defendant.

## OPINION AND ORDER

*SMITH*, Senior Judge

This consolidated action is before the court on defendant's partial motion to dismiss. Plaintiffs primarily claim that the United States Army Corps of Engineers ("Corps") effected a Fifth Amendment taking of their property by diverting flood waters from the Mississippi River onto their property, which is located in Warrant County, Mississippi. But in addition to seeking relief under the Fifth Amendment, plaintiffs also argue that this action by the Corps violated the takings clause of the Mississippi Constitution and constituted a nuisance or trespass under Mississippi common law.

On October 26, 2015, defendant filed a motion to dismiss plaintiffs' state law claims for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the U.S. Court of Federal Claims ("RCFC"). For the following reason, the court grants defendant's partial motion to dismiss.

I.      **Background**

A.      **The Corps Diverted Flood Water onto Plaintiffs' Property**

The plaintiffs in *Alford, et al*. ("plaintiffs") are all Mississippi residents, who own real and personal property in the Eagle Lake Community, which is located in Warrant County, Mississippi, in the Lower Mississippi River Valley.  Sec. Am. Compl. ¶¶ 10 – 48, ECF No. 35 ("Compl.").  This valley "is a relatively flat plain of about 35,000 square miles bordering the river, which would be inundated during times of high water if not for man-made protective works."  Compl. ¶ 52.  Following the disastrous Mississippi River Flood of 1927, the Federal Government passed the Flood Control Act of 1928, authorizing the creation of the Mississippi River and Tributaries Project, which is a system of levees and floodways designed to contain flood flows and redirect excess flows away from critical areas of the lower Mississippi.  Compl. ¶¶ 53 – 55.

Plaintiffs' property is located near Eagle Lake, which, until 1866, was an oxbow bend on the lower Mississippi River, known as Eagle Bend.  Silting on both sides of the water channel cut off the bend from the Mississippi, creating an oxbow lake.  The U.S. Army Corps of Engineers ("Corps") further separated Eagle Lake from the Mississippi River by completing the Mainline Mississippi River Levee in 1925 and the Steel Bayou Drainage Structure in 1968.  Compl. ¶ 57.  These structures changed the source of backwater to Eagle Lake from the Mississippi and Yazoo Rivers to the Steel Bayou and Sunflower Rivers.  *Id.*  In 1977, the Corps constructed the Muddy Bayou Control Structure, which "controls the waters entering and leaving Eagle Lake."  Compl. ¶ 59.  The Mississippi Department of Wildlife, Fisheries, and Parks and the Corps have joint operational control of the Muddy Bayou Control Structure, pursuant to the Eagle Lake Water Level Management Agreement ("Eagle Lake Agreement"), which was executed on December 6, 2000.  Compl. ¶ 60.

In March and April 2011, several large storm systems caused the Mississippi River to "swell[] to record stages."  Compl. ¶ 65.  Plaintiffs describe the resulting flood as "among the largest and most damaging high water events in the history of the United States . . . comparable in extent to the Great Mississippi Flood of 1927."  Compl. ¶ 65.  Pressure from the flood waters threatened to breach the Mississippi River Mainline levee—which, according to the Corps, would have endangered "[a]pproximate[l]y 4,000 structures (3,000 homes [and] 1,000 other structures) and 925,000 acres."  Compl. ¶ 68.

To avert this potentially catastrophic flooding, the Corps approved an emergency proposal to "reduce[] pressures on the Mississippi River levee near Buck Chute" by "opening the Muddy Bayou Structure to allow water to enter Eagle Lake."  Corps Mem., Pl.'s Ex. A, at 1-2, ECF No. 34.  The Corps described this action as a "major deviation from the approved Water Control Plan," which would raise the level of water in Eagle

2

Lake "above the level authorized by the water control plan [set forth in the Eagle Lake Agreement]." *Id.* The Corps acknowledged that the deviation would cause some damage to the Eagle Creek community, including "the inundation of the fishing piers located in the lake . . . ." *Id.* The Corps approved this deviation on April 28, 2011. *Id.*

Plaintiffs allege that the inundation of Eagle Creek resulting from this deviation caused "substantial damage to [or] devaluation of [p]laintiffs' homes, businesses, buildings, structures, equipment, docks, piers, retaining walls, fishery waters, and other real and personal property located in the Eagle Lake Community." Compl. ¶ 80.

### B.    Procedural History

The plaintiffs in *Alford et al.* originally filed suit on April 4, 2014, arguing that the Corps effected a Fifth Amendment taking by intentionally diverting flood waters from the Mississippi River onto Eagle Lake. See Original Compl., *Alford et al.*, No. 14-304, ECF No. 1. Plaintiff Chaney, likewise, filed a complaint alleging a Fifth Amendment taking, on November 18, 2014. *See* Original Compl, *Chaney*, No. 14-1120 L, ECF No. 1. On March 23, 2015, the court consolidated *Alford et al. v. United States* with *Chaney v. United States*. *See* Order, *Alford et al.*, ECF No. 20. On August 14, 2015, the court set a deadline of May 13, 2016 for the close of all discovery. *See* Order, *Alford et al.*, ECF No. 29.

On September 17, 2015, the plaintiffs in *Alford et al*. and *Chaney* each filed amended complaints, adding three new claims (Counts II, III, and IV) in addition to the original takings claim (now Count I). *See Alford et al.*, ECF No. 34 – 35. In Count II, plaintiffs argue that the Corps violated the takings provision of the Mississippi Constitution of 1890, found in Article 3 Section 17. Compl. ¶¶ 82 – 83 (ECF No. 35). In Count III, plaintiffs argue that the Corps' action violated real property rights protected by state law. Compl. ¶¶ 84 – 85. Finally, in Count IV, plaintiffs allege that the Corps' action violated their rights as third party beneficiaries of the Eagle Lake Agreement by impermissibly allowing the water level in Eagle Creek to exceed the maximum level set under the terms of the Eagle Creek Agreement. Compl. ¶¶ 86 – 91.

On October 26, 2015, defendant moved to dismiss Counts II and III for lack of jurisdiction, pursuant to RCFC 12(b)(1). Def's Mot. Dismiss, ECF No. 37. Defendant's motion is now ripe for review.

## II.    Discussion

Like all federal courts, the Court of Federal Claims is "a court of limited jurisdiction." *Brown v. United States*, 105 F.3d 621, 623 (Fed. Cir. 1997). Of course, jurisdiction is a term that means "limitation." No court has infinite power. All jurisdiction is limited. Jurisdiction is a threshold matter that must be considered before the court can

proceed to the merits. *PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1364 (Fed. Cir. 2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998)). When the court's subject matter jurisdiction to hear a case is challenged, the plaintiff has the burden of establishing by a preponderance of the evidence that this court has jurisdiction over its claims. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The court "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (2011) (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995)).

This court's jurisdictional grant is found primarily in the Tucker Act, which provides the Court of Federal Claims the power "to render any judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Although the Tucker Act explicitly waives the sovereign immunity of the United States against such claims, it "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). Rather, in order to fall within the scope of the Tucker Act, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part).

In its partial motion to dismiss, defendant argues that the court lacks jurisdiction over Counts II and III because these claims allege violations of state law. Specifically, in Count II, plaintiffs allege that even if the court determines that the flooding on "Plaintiffs' property is not deemed to be a 'taking'" under the Fifth Amendment of the U.S. Constitution, Section 17 of the Mississippi Constitution of 1890 entitles plaintiffs to "compensation for all damages incurred as a result of the public use made of [p]laintiffs' property." Compl. ¶ 83. In Count III, plaintiffs argue that "the wrongful, intentional actions of the Defendant which resulted in the flooding of Plaintiffs' property constitute a trespass and/or nuisance under the laws of the state of Mississippi and further violate the natural water flowage rights protected by the real property laws of the state of Mississippi." Compl. ¶ 85.

The court lacks jurisdiction over these two claims. The plain language of the Tucker Act only confers jurisdiction over claims "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1); *see also Slone v. United States*, No. 14-408C, 2014 WL 2535078, at *2 (Fed. Cl. June 4, 2014) ("the Tucker Act only provides for jurisdiction for claims arising under the United States Constitution, not state constitutions"); *Souders v. S.C. Pub. Serv. Auth.*, 497 F.3d 1303,

1307 (Fed. Cir. 2007) (noting that "claims founded on state law are also outside the scope of the limited jurisdiction of the Court of Federal Claims").

Additionally, the court lacks jurisdiction over plaintiffs' trespass/nuisance claim because it sounds in tort. *See, e.g., Cycenas v. United States*, 120 Fed. Cl. 485, 498 (2015) (explaining that trespass claims sound in tort); *CanPro Investments Ltd. v. United States*, 120 Fed. Cl. 17, 25 (2015) (stating that "[n]uisance is a tort . . . and this court plainly lacks jurisdiction over tort claims). As explained above, the Tucker Act specifically limits this court's jurisdiction to "claim[s] against the United States . . . in cases *not* sounding in tort." 28 U.S.C. § 1491(a)(1) (emphasis added).

Plaintiffs, in response, argue that "even though a claim may sound in tort, if the primary thrust of the complaint is breach of contract, the Claims Court may retain jurisdiction." Pl.'s Resp. at 3. In support of this proposition, plaintiffs rely primarily on *McAbee Construction, Inc. v. United States*, 22 F.3d 1106, No. 93-1383, 1994 WL 108057 (Fed. Cir. Mar. 29, 1994) (unpublished opinion). The plaintiff in *McAbee* filed suit in federal district court, for $922,500.00 in damages under the Federal Tort Claims Act. The plaintiff in that case alleged that defendant had damaged its land by negligently or wrongfully depositing over 200,000 cubic yards of excess fill material on plaintiff's land, rendering the property unusable. Although plaintiff had granted the government an easement to deposit fill material onto the land in question, plaintiff alleged that the Corps deposited material "in excess of its authority" under the contract. *Id.* a *3. The Federal Circuit held that notwithstanding plaintiff's decision to style the complaint as a torts claim, the substance of the allegations clearly indicated that "the alleged conduct of defendant, if true, must be considered a breach of contract and not tortious conduct." *McAbee Const., Inc. v. United States*, 22 F.3d 1106 (Fed. Cir. 1994) at *2. Since plaintiff was seeking over $10,000 in damages, the Federal Circuit concluded that the CFC had exclusive jurisdiction over the matter. *Id.* (citing 28 U.S.C. § 1346(a)(2) and 28 U.S.C. § 1491(a)(1)).

Plaintiffs misconstrue the legal conclusion of *McAbee*. That case simply stands for the proposition that a plaintiff cannot skirt the jurisdictional limitations of 28 U.S.C. § 1346(a)(2) by artfully construing a contract claim as a tort claim. In other words, the court will focus on the substance of a claim over the form if the two are inconsistent. Plaintiffs' contention that this court has jurisdiction over a claim sounding in tort as long as "the primary thrust of the complaint is breach of contract" is not relevant here. This is a tort claim and not a contract claim.

Finally, plaintiffs argue that "[t]he claims that the Government are attempting to dismiss serve to show the underlying property interest that is protected by the Constitution and serve as the basis for monetary damages afforded to the Plaintiff by the Federal Claims Court." Pl.'s Resp. at 4. The court agrees that it may consider state law

for the purpose of determining whether plaintiffs have a cognizable property interest for purposes of a Fifth Amendment takings claim, but, in the amended complaint, plaintiffs did not present Counts II and III for this limited purpose. Plaintiffs presented these claims as alternative theories of relief.  As explained above, 28 U.S.C. § 1491(a)(1) expressly limits this court's jurisdiction to claims "not sounding in tort."  Accordingly, the court lacks jurisdiction to hear Counts II and III.

**III.    Conclusion**

For the reasons set forth above, defendant's partial MOTION to dismiss Counts II and III is **GRANTED.**  On or before Wednesday, February 17, 2016, the parties shall file a joint status report indicating how this case should proceed, with a proposed schedule, as appropriate.

**IT IS SO ORDERED.**

 s/ Loren A. Smith
LOREN A. SMITH
Senior Judge